UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joyce M. Shockency and
John H. Moore,

           Plaintiffs,

   v.

Ramsey County, Ramsey County
Sheriff Robert Fletcher, in his official
and individual capacity, and Nicholas O'Hara,
in his official and individual capacity,

           Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 04-1081 ADM/JSM

---

Nicholas G.B. May, Esq., May & O'Brien, LLP, Hastings, MN, and James H. Kaster, Esq., Nichols Kaster & Anderson, PLLP, Minneapolis, MN, argued for and on behalf of Plaintiffs.

C. David Dietz, Esq., Assistant Ramsey County Attorney, St. Paul, MN, argued for and on behalf of Defendants.

---

## I. INTRODUCTION

On April 11, 2006, oral argument before the undersigned United States District Judge was heard on the Summary Judgment Motion [Docket No. 85] of Defendants Ramsey County, Ramsey County Sheriff Robert Fletcher ("Fletcher"), and Nicholas O'Hara ("O'Hara"), (collectively, "Defendants"). In their Amended Complaint ("Complaint") [Docket No. 2], Plaintiffs Joyce M. Shockency ("Shockency") and John H. Moore ("Moore") allege Defendants violated their constitutional rights by improperly transferring them in retaliation for exercising their First Amendment rights, and that Defendants violated Minn. Stat. § 13.01. For the reasons set forth herein, Defendants' Motion is denied in part and granted in part.

1

## II. BACKGROUND[1]

Plaintiff Moore began his career as a deputy sheriff at the Ramsey County Sheriff's Department ("RCSD") in 1981. Moore Dep. (May Aff. [Docket No. 89] Ex. 15) at 18. He achieved the rank of sergeant in the 1990s, and, in 2000, was promoted to lieutenant. Id. at 19-20. After being promoted to lieutenant, Moore supervised the patrol division of approximately eighty deputies and sergeants. Id. at 139; Fletcher Dep. (May Aff. Ex. 1) at 90-91.

Beginning in June 2001, Moore informed others of his decision to run against Fletcher for the position of Ramsey County Sheriff. Moore Dep. at 29-31; Shockency Dep. (May Aff. Ex. 16) at 78. In mid July 2001, Moore told Dennis Flaherty, a supporter of Fletcher, of his intention to run for sheriff. Moore Dep. at 29-30; Fletcher Dep. at 80. Approximately ten days later, Fletcher asked Moore to meet him at a local restaurant. Moore Dep. at 30; Fletcher Dep. at 80-81. At that meeting, Fletcher informed Moore of his transfer effective August 6, 2001 from patrol lieutenant to the apprehension unit to serve under O'Hara. Moore Dep. at 30-32; Fletcher Dep. at 82-83, 98-100, 162-63. Generally, supervisors in the patrol division are more experienced than those in other units in the RCSD. Fletcher Dep. at 199. Fletcher told Moore the transfer was because of alleged communication problems between Moore and Undersheriff George Altendorfer ("Altendorfer"), who was Moore's direct supervisor at the time in the patrol division. Moore Dep. at 32. No evidence has been presented demonstrating that the alleged communication problems were documented with Moore prior to his meeting with Fletcher. Altendorfer Dep. (May Aff. Ex. 13) at 32; Moore Dep. at 32; Luey Dep. (May Aff. Ex. 11) at 25-

---

[1] For purposes of the instant Motion, the facts are viewed in the light most favorable to Plaintiffs, the nonmovant. See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

26.

Altendorfer testified that the communication problems related to occasions when Moore failed to acknowledge Altendorfer while passing in the hall.  Altendorfer Dep. at 22-23, 26. There is conflicting evidence as to when and how Fletcher learned of the alleged communication problems.  According to Fletcher, he learned of the problem from Altendorfer and Luey. Fletcher Dep. at 94.  However, Altendorfer claimed that he never told Fletcher of any communication problems with Moore; and, in fact, Fletcher approached Altendorfer to inform him of the decision to transfer Moore.  Altendorfer Dep. at 29-30.  Undersheriff John Luey ("Luey") also testified that he was not involved in the decision to transfer Moore, and it was not discussed by the RCSD management team.  Luey Dep. at 27-28, 38-39.

Moore's transfer to the apprehension unit marked the first time a lieutenant, rather than a lesser ranked officer, held that position.  Fletcher Dep. at 103-04.  While working in the apprehension unit, Moore alleges he faced numerous obstacles to performing his job, including being required to execute search warrants on violent felons without assistance, being wrongfully accused of not responding to calls and messages, and being disciplined for attempting to obtain assistance in serving a warrant from an officer in another unit.  Moore Dep. at 62, 66-68.  Moore also alleges his discipline was inconsistent with that received by other officers.  When asked about this allegation, O'Hara replied discipline was handed out in this manner "Because I said so."  O'Hara Dep. (May Aff. Ex. 2) at 143.

In January 2002, Moore's responsibilities in the apprehension unit were removed and O'Hara assigned him to a team with Deputy Ken Grosinger.  Id. at 82.  In August 2002, Moore

and Grosinger were required by O'Hara to keep daily logs on their activities, even though this was not a recognized step in the progressive discipline procedure. Id. at 84. O'Hara testified this was the only time officers in the RCSD were required to keep such a log. Id. at 84-86. In September 2002, Moore was assigned to be O'Hara's executive assistant. Id. at 148; Fletcher Dep. at 109-10. In this position of reduced responsibility, Moore was allowed to leave the office only during his lunch break, and required to take his lunch break at noon. Fletcher Dep. at 109-10, 113,133-34; Moore Dep. at 97-98; O'Hara Dep. at 156-58. O'Hara forwarded Fletcher's campaign manager copies of documents disciplining Moore. Moore Dep. at 82; May Aff. Ex. 25.

Plaintiff Shockency was first hired by RCSD as a dispatcher in 1977. Shockency Dep. at 12. Shockency later became a deputy sheriff, and was promoted to sergeant in 1995. Id. In January 1999, Shockency was transferred to the patrol division at her request. Id. at 44. She attained the position of sergeant in charge of the midnight shift, a job of numerous duties and responsibilities. Metusalem Dep. (May Aff. Ex. 9) at 82. Shockency has not been cited for any discipline problems. Id.; Fletcher Dep. at 16. In 2000, Shockency was put in charge of the field training officer program. Shockency Dep. at 61, 76. In this position, she was responsible for developing and implementing the training for every patrol officer. Id. at 61.

In the summer of 2001, Shockency learned that Moore was running against Fletcher for the position of sheriff. Id. at 78. Shockency began volunteering on Moore's campaign, which included marching in parades, attending fundraisers, and participating in leaflet drops. Id. at 84. Fletcher was aware of Shockency's activities, and knew she was supporting Moore. Fletcher

4

Dep. at 62-63.

Towards the end of the summer of 2001, Deputy Don Rindal ("Rindal"), a supporter of Fletcher, told Deputies Rick Werdien ("Werdien") and Dan Ruittimann that Shockency would be moved out of her position as patrol sergeant in January 2003. Werdien Dep. (May Aff. Ex. 5) at 4-6; Rindal Dep. (May Aff. Ex. 4) at 11-12, 21. The conversation had centered around Shockency's support of Moore. Werdien Dep. at 5-6. In the winter of 2002, Werdien and Deputy Keith Olson told Shockency that Rindal had said she would be transferred in January 2003, and would no longer supervise the field training officer program. Id. at 6-8; Shockency Dep. at 166-67. Shockency was, in fact, transferred out of her position in January 2003 and moved to the midnight transportation unit. Fletcher Dep. at 72-74. Her responsibilities over the field training officer program were also terminated. Shockency Dep. at 128. Shockency's new position had fewer duties and responsibilities, and she was directed to no longer assist other officers in law enforcement activities, make arrests, or make traffic stops. Id. at 101-02.

As with Moore's transfer, a dispute exists as to who requested or recommended Shockency's transfer. Fletcher and Chief Deputy Dave Metusalem stated that Altendorfer recommended the transfer, while Altendorfer claimed he was not involved in the transfer. Fletcher Dep. at 30, 47, 79; Metusalem Dep. at 86; Altendorfer Dep. at 27. Fletcher also claimed Altendorfer decided to take away Shockency's responsibilities in the field training officer program, while Altendorfer again testified he was not involved in that decision. Fletcher Dep. at 129; Altendorfer Dep. at 28.

Several officers of the RCSD testified that Fletcher used job assignments and duties to

pressure officers to support his political campaigns. Altendorfer Dep. at 38-39; Jerome Dep. (May Aff. Ex. 12) at 26-34; Sazma Dep. (May Aff. Ex. 3) at 9-10.

### III. DISCUSSION

**A.     Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     42 U.S.C. 1983**

Defendants first move for summary judgment on Plaintiffs' 42 U.S.C. § 1983 claim. "Section 1983 imposes liability for certain actions taken 'under color of' law that deprive a person 'of a right secured by the Constitution and laws of the United States.'" Dossett v. First State Bank, 399 F.3d 940, 947 (8th Cir. 2005), quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 931 (1982). Plaintiffs claim violation of their First Amendment, Equal Protection, and Due

6

Process rights by all Defendants.

    1.    **First Amendment**

        a.    **Prima Facie Claim**

Defendants argue Plaintiffs' First Amendment violation claims must fail because Plaintiffs' jobs were subject to political patronage. As a general matter, public employees can not be retaliated against based on political speech or affiliation. Elrod v. Burns, 427 U.S. 347, 356-61 (1976). An exception to the rule exists, however, when a government division can demonstrate that "party affiliation is an appropriate requirement for the effective performance of the public office involved." Branti v. Finkel, 445 U.S. 507, 518 (1980). The burden of proving the necessity of political affiliation is on the governmental unit. Elrod, 427 U.S. at 368. Defendants cite authority from the Fourth, Seventh, and Eleventh circuits demonstrating that political loyalty to the sheriff is an acceptable requirement for deputy sheriffs. See Jenkins v. Medford, 119 F.3d 1156 (4th Cir. 1997); Upton v. Thompson, 930 F.2d 1209 (7th Cir. 1991); Terry v. Cook, 866 F.2d 373 (11th Cir. 1989). These cases, however, based their decision on a review of the applicable state law. Jenkins, 119 F.3d at 1163-64; Terry, 866 F.2d at 377; see also Swanson v. Van Otterloo, 993 F. Supp. 1224, 1236 (N.D. Iowa 1998). The Eighth Circuit has not yet ruled on this issue as to any state in its jurisdiction.

Minnesota law must be analyzed to determine whether Plaintiffs, as deputy sheriffs, were subject to the political patronage exception of their First Amendment rights. Defendants rely on Minn. Stat. § 387.14, enacted over 120 years ago, governing deputy sheriffs, which states in part: "The county board shall determine the number of permanent full time deputies and . . . fix the

7

compensation for each position. . . .The sheriff shall appoint in writing the deputies and other employees, for whose acts the sheriff shall be responsible and whom the sheriff may remove at pleasure." Although at first blush this statute appears to give unfettered discretion to sheriffs to hire and fire deputy sheriffs, the Minnesota Supreme Court has found that it is subject to some restriction. In General Drivers, Local No. 346 v. Aitkin County Bd., the Supreme Court stated that Minn. Stat. § 387.14 is an "ancient statute." 320 N.W.2d 695, 699 (Minn. 1982). It held that under the Public Employment Labor Relations Act ("PELRA"), a collective bargaining agreement ("CBA") or a civil service system adopted by a county, can trump a sheriff's unfettered discretion to hire and fire deputies. Id. at 699-700. Minn. Stat. § 179A.03, subd. 15(f) states:

> Nothing in this subdivision diminishes the authority granted pursuant to law to an appointing authority with respect to the selection, direction, discipline, or discharge of an individual employee if this action is consistent with general procedures and standards relating to selection, direction, discipline, or discharge which are the subject of an agreement entered into under [the PELRA].

Additionally, Minn. Stat. § 387.37 provides: "No deputy sheriff or employee after continuous employment of one year shall be removed or discharged except for cause and upon written charges and after an opportunity to be heard . . . ."

Both Plaintiffs are covered by CBAs.[2] The CBAs clearly state that Defendants may not discriminate against Plaintiffs based on their political beliefs. May Aff. Ex. 36 at 2; Ex. 37 at 2. Moreover, the CBAs state that Plaintiffs "shall have rights granted to all citizens by the United States and Minnesota State Constitution." May Aff. Ex. 36 at 11; Ex. 37 at 11. Finally, the

---

[2] Because Moore is a lieutenant and Shockency a sergeant, they are covered by separate CBAs. However, the relevant language is virtually identical as to this issue. May Aff. Ex. 36 at 2; Ex. 37 at 2.

CBAs provide that Plaintiffs may only be disciplined for just cause. May Aff. Ex. 36 at 10; Ex. 37 at 10.

In addition to the bargained-for rights available to Plaintiffs in the CBA, a Minnesota statute specific to Ramsey County states:

> No employee in the classified service shall be under any obligation to contribute to a political service or fund to any person, body, or committee, and no employee in the classified service may be discharged, suspended, demoted, or otherwise disciplined or prejudiced for refusal to do so. All employees in the classified and unclassified service shall be subject to the prohibition on political activities set forth in section 211B.09.

Minn. Stat. § 383A.297.[3] Minn. Stat. § 211B.09 reads:

> An employee or official of the state or of a political subdivision may not use official authority or influence to compel a person to apply for membership in or become a member of a political organization, to pay or promise to pay a political contribution, or to take part in political activity. A political subdivision may not impose or enforce additional limitations on the political activities of its employees.

Therefore, based on the statutory framework of Minnesota law, Plaintiffs, as deputy sheriffs, were not subject to the political patronage exception for First Amendment purposes.

Plaintiffs have demonstrated a genuine issue of material fact as to whether they were retaliated against because of their political activity. Viewing the facts in the requisite light most favorable to Plaintiffs, a reasonable jury could find that the reduction in responsibilities and duties to both Plaintiffs were the result of the exercise of Plaintiffs' protected free speech rights. The conflicting testimony of Fletcher and his undersheriffs regarding the reason for the transfers of Plaintiffs coupled with the timing of the transfers is probative of the motivation for the transfer. Additional circumstantial evidence from third parties suggests that Defendants specifically punished Plaintiffs for their activities in opposing Fletcher in his campaign for

---

[3] There is no dispute that Plaintiffs' positions were in the classified service. See Minn. Stat. § 383A.286, subd. 2(n).

sheriff.

Defendants also aver that Plaintiffs have not demonstrated an adverse employment action, and therefore, can not recover on their claim that their First Amendment rights were violated. "To prove a constitutional injury in an employment context, [plaintiffs] must show [they] suffered an adverse employment action and 'a causal connection between the protected activity and the adverse employment action.'" Jones v. Fitzgerald, 285 F.3d 705, 713 (8th Cir. 2002), quoting Bechtel v. City of Belton, 250 F.3d 1157, 1160 (8th Cir. 2002). "To constitute an adverse employment action, the complained of action must have an adverse impact on the employee and must effectuate 'a material change in the terms or conditions of . . . employment.'" Id. Although adverse employment actions usually consist of demotions, terminations, or suspensions, the Eighth Circuit has determined that an adverse employment actions may be constituted if the consequences to a plaintiff are "'more disruptive than a mere inconvenience or an alteration of job responsibilities' [or][c]hanges in duties or working conditions that cause no materially significant disadvantage." Kim v. Nash Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997). Additionally, the Supreme Court recently held that a reassignment to less prestigious or desirable duties may constitute an adverse employment action. Burlington Northern and Santa Fe Ry. Co. v. White, No. 05-259, 2006 WL 1698953 at *12 (U.S., June 22, 2006). Here, like the plaintiff in Kim, Plaintiffs suffered from transfers that resulted in significantly reduced duties and responsibilities. A fact issue also exists as to whether Moore suffered from retaliatory disciplinary reprimands. Fletcher Dep. at 112-13; O'Hara Dep. at 139-143.

### b. Qualified Immunity

Next, Defendants argue that, even if Plaintiffs can demonstrate a First Amendment violation, Defendants are subject to qualified immunity. "Under the doctrine of qualified immunity, state actors are protected from civil liability when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Sexton v. Martin, 210 F.3d 905, 909 (8th Cir. 2000), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A two-step inquiry is required to determine whether Plaintiffs' free speech rights were clearly established at the time of the alleged adverse action. Id. at 910 (citation omitted). First, it must be determined whether the speech at issue constitutes a matter of public concern, and second, is must be determined whether the employee's interest in commenting on matter of public interest outweighs the employer's interest in an efficient workplace. Id., citing Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).

The Eighth Circuit has clearly established that sheriff's deputies are free to comment on public matters. Powell v. Basham, 921 F.2d 165, 167 (8th Cir. 1990); Buzek v. County of Saunders, 972 F.2d 992, 997 (8th Cir. 1992). In Powell, the Eighth Circuit held that a sheriff's deputy's free speech rights were clearly established and stated that the "right of public employees to comment on matters of public concern without fear of reprisal has long been established." 921 F.2d at 167. These cases are sufficiently analogous to the case at bar to determine that the Plaintiffs' free speech rights are clearly established. Burnham v. Ianni, 119 F.3d 668, 677 (8th Cir. 1997).

In Sexton, the Eighth Circuit stated that "[b]efore the Court commences the Pickering

11

balancing test . . . it is critical to determine whether the defendant has produced sufficient evidence that the speech had an adverse effect on the efficiency of the employer's operations." 210 F.3d at 911.  Here, Defendants have asserted their interest in operating the RCSD as an efficient workplace, but have offered no evidence that the actions taken against Plaintiffs were predicated on protecting that interest.  Although the evidence is conflicting as to the reasons Plaintiffs were transferred to positions of lesser responsibility, no evidence has been proffered that Plaintiffs' political activities disrupted the workplace.[4]  For example, Fletcher claims he transferred Shockency because she would do a better job than another sergeant in the transportation unit, and further claims Moore was transferred due to poor communication with Altendorfer.  Fletcher Dep. at 71; Moore Dep. at 32.  Because Plaintiffs' free speech rights were clearly established and because there is no evidence that their activities interfered with an efficient working environment, qualified immunity is not available to Defendants.  Consequently, Defendants' Motion for Summary Judgment based on this defense is denied.

        c.    **_Monell_ Claim**

Defendants contend that Ramsey County may not be held liable on Plaintiffs' 42 U.S.C. § 1983 claims.  In general, political subdivisions may not be held vicariously liable for the acts of their employees.  Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999), citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978).  However, a "political subdivision may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional policy or custom of the subdivision."  Id.  Here, no

---

[4] In Defendants' reply memorandum, Defendants cite two instances of behavior by Moore which they allege constitute disruption to the workplace.  Defs' Reply Memorandum [Docket No. 101] at 2-3.  However, neither of these incidents concern political activities.

evidence has been presented that Ramsey County had an official policy or custom of retaliation against deputies who participated in political activities. However, a single decision can set county policy or custom if a "deliberate choice to follow a course of action was made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Buzek, 972 F.2d at 996. Therefore, the pivotal question is whether Ramsey County Sheriff Fletcher was responsible for establishing final policy with respect to the subject matter in question.

Here, there is sufficient evidence that Fletcher possessed sufficient authority over final policy to maintain Plaintiffs' Monell claim. Plaintiffs have presented evidence that Fletcher held the authority to transfer the Plaintiffs. Metusalem Dep. at 70, 86. Additionally, Fletcher held responsibilities for managing the RCSD, including personnel and budget decisions. Fletcher Dep. at 21-26, 29, 31-32, 34. Viewing these facts in a light most favorable to the Plaintiffs, a reasonable jury could conclude that Fletcher held sufficient authority to establish custom on behalf of Ramsey County. Buzek, 972 F.2d at 996. Thus, Defendants' Motion for Summary Judgment on Plaintiffs' Monell claim is denied.

    **2.    Equal Protection**

Defendants next argue Plaintiffs' equal protection argument can not survive summary judgment because they do not allege discrimination on the basis of race, national origin, ethnicity, gender, or religion. Defendants cite no evidence or law to support their argument. Membership in a protected class is not required to make an equal protection claim. In a case involving differing treatment of speech, the Supreme Court held that "[a]s in all equal protection

13

cases . . . the crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment." Police Dept. of City of Chicago v. Mosley, 408 U.S. 92, 95 (1972). Plaintiffs have alleged they were treated differently than other deputies who exercised their free speech rights. Defendants have offered no explanation or government interest to justify why Plaintiffs were treated differently, nor have they offered evidence to demonstrate it. Plaintiffs have offered evidence that supporters of Moore were singled out and penalized for their activities. Because Defendants have offered no argument to rebut Plaintiffs' allegations, this claim survives Defendants' Motion for Summary Judgment.

### 3. Due Process

Finally, Defendants aver Plaintiffs' claim of a due process violation must be dismissed because Plaintiffs do not have a property interest in their policy-making positions. The same reasons previously relied upon to find Plaintiffs' deputy positions are not subject to political patronage run contrary to Plaintiffs now asserting they held policy making positions. It is axiomatic that public employees have a protectable property interest in public employment when the person has a "legitimate claim of entitlement to it." Blankenbaker v. McCook Public Power Dist., 940 F.2d 384, 385 (8th Cir. 1991) (citations omitted). Both Minnesota statutes and Plaintiffs' CBAs restrict RCSD's power to terminate Plaintiffs to reasons of just cause. However, whether Plaintiffs had a property interest in their deputy sheriff positions is of no significance, because they have not alleged that the property interest was taken from them. Neither Plaintiff was terminated, nor did they lose rank or pay. No precedent has been offered to show that due process violations extend to the type of adverse employment actions claimed by

14

Plaintiffs. Therefore, Defendants' Motion is granted as to Plaintiffs' due process claim.

**C.     Minn. Stat. § 13.43**

Defendants argue Plaintiffs' Minnesota Data Practices Act claim should be dismissed because Plaintiffs have not alleged facts sufficient to support such a claim. Minn. Stat. § 13.43 identifies information relating to public employees which may be made public. This includes: "the final disposition of any disciplinary action together with the specific reasons for the action and data documenting the basis of the action . . . ." Minn. Stat. § 13.43, subd. 2(a).[5] "All other personnel data is private data on individuals but may be released pursuant to a court order." Id. at subd. 4. Although Plaintiff Moore now alleges that his Minn. Stat. § 13.43 is based upon a quote from Fletcher in the Minneapolis *Star Tribune* stating that Moore was suspended in July 2003 for allegedly taking car parts from a public works garage, there is no similar allegation in Plaintiffs' Complaint. Even a broad reading of the factual allegations contained in the Complaint do not give rise to a cause of action under Minn. Stat. § 13.43. Because Plaintiff Moore has failed to state a claim upon which relief can be granted under Minn. Stat. § 13.43, Defendants' Motion is granted on this claim.

---

[5] "In the case of arbitration proceedings arising under collective bargaining agreements, a final disposition occurs at the conclusion of the arbitration proceedings . . . ." Minn. Stat. § 13.43 subd. 2(b).

15

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Ramsey County, Ramsey County Sheriff Robert Fletcher, and Nicholas O'Hara's Motion for Summary Judgment [Docket No. 85] is denied in part and granted in part.

BY THE COURT:

     s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 13, 2006.